UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHNELL A. BELL, I, )
        )
    Plaintiff, )
        )
    vs. ) Case No. 4:14-CV-0027 (CEJ)
        )
GEORGE A. LOMBARDI, et al., )
        )
    Defendants. )

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of defendant Tina Coffman for summary judgment. Plaintiff has responded in opposition, and the issues are fully briefed.

Plaintiff Johnell A. Bell, a prisoner incarcerated by the Missouri Department of Corrections, filed this action pursuant to 42 U.S.C. § 1983, alleging that correctional officers at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) assaulted him in his cell in the administrative segregation unit on May 28, 2013. Following the assault, plaintiff contends that medical providers and employees of Corizon Health, Inc., including defendant nurse Coffman, failed to ensure he received proper medical care for his injuries. Defendant Coffman filed the instant motion asserting that she was not deliberately indifferent to any serious medical need and thus is entitled to judgment as a matter of law.

**I.    Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a

motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Gannon Intern., Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012); Gibson v. American Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Industrial Co.., 475 U.S. at 587).

## II. Background

In the complaint, plaintiff alleges that defendant Coffman came to his cell the morning of May 28, 2013 to assess his injuries following the alleged assault, but she refused to discuss his injuries with him and only cleaned the blood from his face.  At that time, Coffman noted that plaintiff's only area of injury was under his left eye and that he denied being in pain.  Another nurse, Anna Wideman,  saw plaintiff the next day and noted that he had facial swelling, left lateral wrist abrasion, bruising under his left eye, right side facial abrasions, and that he reported being in pain.  On May 29, 2013, after learning that plaintiff's wife had been calling the prison, defendant Coffman returned to plaintiff's housing unit and told him that she would do a full assessment of his injuries later and that she had requested x-rays because she thought something could be broken.  The

following day, May 30, 2013, plaintiff states that he was fully assessed and given ibuprofen for his head injury and antibiotic ointment for the abrasions and cuts on his face, wrists, and arms. Plaintiff contends that the actual injuries he suffered include permanent damage to his right eye, a chipped tooth, fractured face, skin burning, and permanent scars on his face, wrists, hands, and legs.

In support of her motion for summary judgment, Coffman submits copies of plaintiff's medical records, including x-ray reports and her own notes, as well as the affidavit of Thomas Bredeman, a physician and regional medical director for Corizon, LLC who reviewed plaintiff's medical record. Coffman noted that when she first saw plaintiff on the morning of May 28, 2013, he reported a use of force incident and made vague complaints of injury. She noted that he was aggressive during her encounter with him, and that he was alert and oriented with even and unlabored respirations. No gross abnormalities were noted and he was walking in his cell without any problem. The only injury apparent to Coffman at that time was to plaintiff's face, with a minor amount of blood noted under his left eye. He was encouraged to calm down and was told that a fuller assessment could not be conducted while he remained aggressive and threatening.

Approximately one hour later, Coffman returned to plaintiff's housing unit to clean the blood from his face and perform a more extensive examination. Plaintiff's nose and teeth were found to be intact with no evidence of injury. The only injury found was a laceration and minor swelling beneath his left eye. Coffman noted that plaintiff denied excessive pain at that time and reported that his vision was normal. Because the bleeding had stopped, no bandages were applied. Coffman instructed plaintiff to notify custody or medical staff if he had any further problems.

On May 29, 2013, plaintiff was seen by nurse Wideman who noted some bruising and abrasions on his face and wrist. He was also seen by Coffman and complained of a

throbbing head, facial swelling, and a left wrist abrasion. A series of facial and orbital x-rays were ordered to ensure plaintiff had not sustained any fractures. On May 30, 2013, plaintiff again saw Coffman, who performed a thorough examination. She found some bruising and abrasions, and prescribed plaintiff pain medication and antibiotic ointment per plaintiff's request. When she asked if he had incurred any damage to his vision, plaintiff stated that his vision had always been poor and he wore prescription glasses. Coffman noted that plaintiff's eye movements were appropriate and his pupils were equal and reactive.

X-rays of plaintiff's facial and orbital bones were performed on May 31, 2013. According to the radiologist's reports, the results revealed soft tissue swelling on the right side of his face and possible evidence of trauma to the maxillary bones beneath plaintiff's eyes that could be from old or new fractures. Repeat x-rays were performed on September 6, 2013 to compare to the earlier x-rays and make a more conclusive determination as to any fracture. Soft tissue swelling was absent, and evidence of possible fracture relating to his left eye was unchanged, which the radiologist concluded "probably represents an old injury." Report at *18 [Doc. #50-2]. The right eye also revealed no fracture. No further testing was recommended. The medical records indicate that plaintiff was seen by medical staff on approximately 15 additional occasions between June and August 2013, and plaintiff did not voice medical complaints during any of these encounters.

In his response in opposition to summary judgment, plaintiff contends that defendant Coffman falsified the notes she made of her encounters with plaintiff and treatment of his injuries. He states that in his first encounter with Coffman following the use of force incident he was "cold, naked, burning from mace [sic], bleeding and in pain because he had just been beaten for 15 minutes non stop." Pl.'s Statement ¶ 4 [Doc.

#81-1]. He states that Coffman only assessed him through a screened window on the door while he remained inside his cell. He attached black and white scanned photographs taken of his injuries after the use of force incident that he contends demonstrate an objectively serious medical need. Plaintiff claims he was never asked about his vision and had "plenty more" injuries than were noted by Coffman. Id. at ¶ 6. When Coffman later returned to assess plaintiff, she did not ask him any questions, told him that he was the cause of his own injuries, and did not take his vital signs.

On May 29, 2013, plaintiff states that nurse Wideman brought him a medical release form to sign in his unit and made more detailed notations of his injuries. Med. Record at *12 [Doc. #81-3] (noting facial swelling, eye bruising, lateral wrist abrasion, throbbing head). Coffman also stopped by that day, but told him she would reassess him later. On May 30, 2013, Coffman took plaintiff's vital signs and provided him with pain medication and antibiotic ointment, but ignored his complaints of other injuries. Plaintiff acknowledges that he received x-rays on May 31, 2013 and follow-up x-rays on September 6, 2013, but states that he has never had a known fracture to his face prior to this incident and thus disputes the conclusion of an old injury. He contends that if he had been sent to a hospital for a CT scan, there would have been a definitive conclusion as to possible facial fractures.

### III. Discussion

"It is well established that the Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from deliberate indifference to serious medical needs." Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison [officials] in intentionally

denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle, 429 U.S. at 104.

Deliberate indifference involves both an objective and subjective analysis. Jackson v. Buckman, 756 F.3d 1060, 1065 (8th Cir. 2014). The objective component requires a plaintiff to demonstrate an objectively serious medical need. Id. "A medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Scott v. Benson, 742 F.3d 335, 340 (8th Cir. 2014) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)).

"The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)). A prisoner "must show more than negligence, more even than gross negligence." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)). The subjective component requires "a mental state akin to criminal recklessness." Vaughn, 557 F.3d at 908 (quoting Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006)). A prison official or medical provider "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

The plaintiff's claim against Coffman is not that she failed to provide treatment, but that the treatment was not timely rendered. Plaintiff argues that Coffman's delay "could have resulted in further significant injury" and caused him unnecessary pain. Pl.'s Resp. at *6 [Doc. #81-2].

"When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment.'" Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (quoting Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" Id. (quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)). An inmate's suit in such a case must fail if he does not present any "verifying medical evidence . . . that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis." Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995) (quoting Beyerbach, 49 F.3d at 1326).

With respect to the allegation of damage to his eyesight, when Coffman asked plaintiff about his vision he responded that he did not know if his eyesight was normal or not because he did not have his glasses. After his glasses were returned to him, plaintiff claims his vision was no longer corrected by the prescription in those lenses. Plaintiff requested and was seen by a doctor on November 12, 2013. Med. Record at *20 [Doc. #81-3]. The doctor assessed plaintiff as having "myopia, physiological[1] cupping," which plaintiff states he did not have before the incident on May 28, 2013. Id. at *21. Plaintiff admits that he wore corrective lenses prior to the use of force incident. He has not demonstrated through verified medical evidence that his nearsightedness is a detrimental effect caused by delay in medical treatment by defendant Coffman. Furthermore, he has not shown that the condition of his vision was so objectively serious

---

1 "Physiologic" is defined as "normal; not pathologic; characteristic of or conforming to the normal functioning or state of the body or a tissue or organ; physiological." Dorland's Illus. Med. Dictionary (32d ed. 2012). "Myopia," also known as "nearsightedness," occurs when "the point of focus is in front of the retina because the cornea is too steeply curved . . . . To correct myopia, a concave (minus) lens is used." The Merck Manual (19th ed. 2011).

that Coffman would recognize any need for immediate medical attention. Cf. Gordon, 454 F.3d at 862 ("Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention.").

Apart from his allegations of unnecessary pain, plaintiff has not presented medical evidence of any detrimental effects from the two-day elapse of time in administering over-the-counter pain medication and antibiotic cream. See Cook v. Pueppke, 421 F. Supp. 2d 1201, 1207 (E.D. Mo. 2006) (granting summary judgment in favor of defendant on a claim that the delay in administering a prescribed antibiotic for a tooth extraction constituted deliberate indifference when plaintiff presented no evidence that any infection or other negative medical condition resulted and plaintiff's only complaint was of resulting pain for alleged failure to administer pain medication). There is no allegation that plaintiff's wounds became infected or that Coffman ignored an otherwise critical or escalating medical situation. Also, the x-rays did not find conclusive evidence of a fracture or the need for further treatment. See Bailey v. Feltmann, No. 4:14-CV-47 (CAS), 2014 WL 7185885, at *7 (E.D. Mo. Dec. 16, 2014) (granting summary judgment in defendant's favor when plaintiff did not offer evidence that his lacerations became infected or that the injury was exacerbated by the delay in treatment). Plaintiff's allegation that Coffman falsified her notes is unpersuasive. Not only is it unsupported by any facts, but Coffman's notes of plaintiff's injuries from the May 30th encounter closely mirrored those of nurse Wideman the day before. Compare Med. Report at *14 [Doc. #81-3] (nurse Coffman noting facial swelling below his eyes, bilateral bruising, and minor abrasions to his wrists) with id. at *12-13 (nurse Wideman noting facial swelling, under eye bruising, and lateral wrist abrasion). Viewing the factual record in the light most favorable to plaintiff, Coffman's delay in providing plaintiff medical treatment did not

rise above mere negligence. See Hartsfield v. Colburn, 491 F.3d 394, 396-98 (8th Cir. 2007) (month-long treatment delay caused, in part, by doctor and nurse miscommunication was "evidence of negligence that does not rise to unconstitutional deliberate indifference"); Logan v. Clarke, 119 F.3d 647, 650 (8th Cir. 1997) ("Although the prison doctors may not have proceeded . . . as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent. The doctors made efforts to cure the problem in a reasonable and sensible manner.").

Plaintiff does not dispute that Coffman examined him on the day of the incident, followed-up with him the next day, and treated him two days later by administering over-the-counter pain medication and antibiotic cream. See Martison v. Leason, Civ. No. 12-3028 (RHK/SER), 2014 WL 2117220 (D. Minn. May 21, 2014) (finding a county jail nurse was not reckless in her care of a prisoner when she responded within 45 minutes of his request and directed incoming nurses on her next shift to continue to check his vital signs). He also does not contest that x-rays were taken. No evidence in the record suggests that the medical care given was "so inappropriate as to evidence intentional maltreatment." Fourte v. Faulkner Cnty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (quoting Smith v. Jenkins, 919 F.2d 90, 92 (8th Cir. 1990). At most, he disagrees with the treatment he was given. See Popoalii, 512 F.3d at 499 (quoting Estate of Rosenberg, 56 F.3d at 37) ("[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation.").

Plaintiff has offered no medical evidence that a delay in treatment had a detrimental effect beyond pain treated by temporary use of over-the-counter pain medication, and thus fails to raise a genuine issue of fact on an essential element of the claim. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot

create a question of fact by merely stating that []he did not feel []he received adequate treatment."  Dulany v. Carnahan, 132F.3d 1234, 1240 (8th Cir. 1997).

For the foregoing reasons, the Court concludes that defendant Coffman is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Tina Coffman for summary judgment [Doc. #48] is **granted**.

A separate Judgment in accordance with this Memorandum and Order will be entered at the conclusion of all proceedings in this matter.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 31st day of March, 2015.