UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHNELL A. BELL, I,                          )
                                             )
            Plaintiff,                       )
                                             )
      vs.                                    )          Case No. 4:14-CV-0027 (CEJ)
                                             )
GEORGE A. LOMBARDI, et al.,                  )
                                             )
            Defendants.                      )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendants George Lombardi, Dwayne Kempker, Terry Russell, Jason Lewis, Fred Treece, David Vandergriff, Randall Owens, Ralph Sturdevant, David Howe, Sam McFerron, Jordan Villmer, Timothy Jones, Matthew Downs, Margaret Huff, Terry Russell, Jr., Kathy Moore, Christopher Skaggs, and Brock LaPlant for summary judgment. Plaintiff has responded in opposition, and the issues are fully briefed.

## I. Background

Plaintiff Johnell A. Bell, an inmate at the Missouri Department of Corrections (MDOC), brings this action pursuant to 42 U.S.C. § 1983. Plaintiff asserts claims against the defendants for excessive use of force, failure to intervene, failure to protect, conditions of confinement in violation of the Eighth Amendment, and due process violations.

Plaintiff alleges that correctional officers Howe, Villmer, Jones, Downs, Huff, and Russell, Jr. assaulted him in his cell in the administrative segregation unit at the Eastern Reception, Diagnostic and Correctional Center (ERDCC) on May 28, 2013. Plaintiff claims MDOC employees McFerron, Moore, and Skaggs witnessed the incident

without intervening.   Plaintiff further contends that defendants Lombardi, Kempker, Russell, Lewis, Treece, Vandergriff, Owens, Sturdevant, and LaPlant were all in a position where they knew or should have known of the danger to plaintiff's health, welfare and safety at the ERDCC, but failed to take reasonable steps to protect plaintiff or prevent him from being harmed.

## II.   **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences to be drawn from the underlying facts.   AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).   The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).   If the moving party meets its burden, the non-moving party may not rest on the allegations of its pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.   Gannon Intern., Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012); Gibson v. Am. Greetings Corp., 670 F.3d 844, 853 (8th Cir. 2012).   "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."   Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co.., 475 U.S. at 587).

### III. Discussion

#### A. Excessive Use of Force

Defendants Howe, Villmer, Jones, Downs, Huff, and Russell, Jr. assert that they are entitled to judgment as a matter of law as to plaintiff's excessive use of force claim on the basis of Heck v. Humphrey, 512 U.S. 477 (1994), and the doctrine of collateral estoppel.  The undisputed facts in the record show that plaintiff was involved in a physical altercation with these defendants on May 28, 2013.  According to plaintiff, on the morning of May 28 he received a letter informing him that he needed to make a phone call to his attorney.  Plaintiff alleges that he had a verbal dispute with defendant Huff about the letter, and Huff refused to allow plaintiff to call his attorney. After his interaction with Huff, plaintiff covered the window of his cell with a towel in an attempt to gain the attention of another correctional officer.

Because plaintiff was unresponsive to Huff's attempts to communicate with him, a Code 16 medical emergency call was made to plaintiff's cell.  The water to plaintiff's cell was turned off and a sandbag was placed in front of his door to keep him from communicating with other inmates.  Defendants Howe, Villmer, Jones, Downs, Huff, and Russell, Jr. responded to the Code 16 call and entered plaintiff's cell. Villmer entered first, while plaintiff stood facing the back wall of his cell with his hands clasped together behind his back.  The parties dispute the sequence and occurrence of events thereafter.  Plaintiff claims that Villmer punched him in the face, knocking his glasses off.  He and Villmer then wrapped their hands around each other as both jostled for position.  Another corrections officer tackled plaintiff and Villmer, and the remaining officers piled on top of them, punching both Villmer and plaintiff.

According to defendants, plaintiff was physically combative and punched them while they attempted to restrain him.

It is undisputed that the officers eventually placed handcuffs on plaintiff behind his back. Plaintiff alleges that once he was handcuffed, the officers lifted him up and slammed him face-first onto the ground. Plaintiff alleges that the officers then placed shackles on his feet and began taking turns punching, kicking, stomping, kneeing, elbowing and slamming him on the floor continuously for fifteen minutes. Plaintiff testified that defendant Huff told the officers that she wanted to see blood, and the officers used pepper spray on him during the incident. The officers also cut plaintiff's clothes off of him while he was restrained.

After the struggle, plaintiff was bleeding. Three of the officers also had injuries that required medical treatment. Pictures taken of plaintiff shortly after the incident show swelling on the left side of his face, bruises around his right eye, and lacerations on his nose and arms. Plaintiff additionally reported having a chipped front tooth and optical nerve damage in his left eye. Four inmate-witnesses provided statements asserting that they saw plaintiff being beaten by correctional officers while he was restrained in handcuffs. Defendants state that plaintiff received his injuries from falling onto his bed or falling onto the floor while wrestling with the officers.

As a result of the altercation, plaintiff was charged with three counts of committing violence against an MDOC staff member, in violation of Mo. Rev. Stat. § 217.385. Defs.' Ex. V [Doc. #125-22]. It was alleged that plaintiff struck various officers in the face with a closed fist. Plaintiff pled guilty in state court to one count of committing violence against an MDOC staff member, and received a ten-year sentence to run concurrently with his underlying sentences.

Defendants argue that plaintiff's excessive use of force claim fails as a matter of law, because plaintiff pled guilty to one count of violence against a correctional officer based on his conduct during the incident.  A claim for damages related to a conviction or sentence that has not been invalidated is not cognizable under § 1983.  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  As such, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."  Id.  If the court determines that the plaintiff's action would not necessarily invalidate the judgment against the plaintiff, the action should be allowed to proceed.  Id.

In his response to the instant motion, plaintiff states that he is neither challenging the lawfulness of his conviction nor claiming that he did not commit violence against a correctional officer during the incident.  Plaintiff concedes that he grabbed defendant Villmer after Villmer punched him in the face.  Plaintiff argues instead that a judgment in his favor would only imply that after he committed violence against Villmer and was restrained, the correctional officer defendants collectively proceeded to use excessive force against him that was maliciously applied after the threat of disorder had subsided.

The Court finds that a judgment in plaintiff's favor on his excessive use of force claim would not necessarily imply the invalidity of his conviction for committing violence against a correctional center employee.  Section 217.385 of the Missouri Revised Statutes provides that "[n]o offender shall knowingly commit violence to an employee of the department or to another offender housed in a department correctional center."  Mo. Rev. Stat. § 217.385.1.  Missouri courts have defined

violence as used in the statute as an "exertion of any physical force so as to injure or abuse." State v. Lee, 708 S.W.2d 229, 231 (Mo. Ct. App. 1986) (quoting Webster's Third New International Dictionary); see also State v. Mack, 12 S.W.3d 349, 352 (Mo. Ct. App. 2000) (finding this definition of violence consistent with the definition of violence in Black's Law Dictionary as "[u]njust or unwarranted use of force, . . . accompanied by fury, vehemence, or outrage; physical force unlawfully exercised with the intent to harm") (quoting Black's Law Dictionary 1564 (7th ed. 1999)). Missouri courts also have interpreted the statute broadly to encompass attempts to use physical force as well as completed assaults. State v. Bailey, 783 S.W.2d 490, 491 (Mo. Ct. App. 1990); Lee, 708 S.W.2d at 231.

The "core judicial inquiry" in a suit for excessive use of force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation and quotations omitted). "Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury." Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In considering an excessive use of force claim, the Court is to weigh the prisoner's testimony, the extent of the prisoner's injury, and whether the "security threat reasonably perceived by defendants, '[would] support a reliable inference' of an unnecessary and wanton infliction of pain." Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Johnson v. Bi-State Justice Ctr./Ark. Dep't Corr., 12 F.3d

133, 136–37 (8th Cir. 1993)).   In weighing these factors, however, the Court is required to "avoid[] the improper resolution of credibility issues," which are assessments for the trier of fact and not for summary judgment.   Id. (quoting Johnson, 12 F.3d at 137).

Plaintiff contends that after his hands were cuffed behind his back and his feet shackled, the need for the use of physical force to restrain him became unnecessary. Thus, plaintiff argues, being beaten for fifteen minutes while fully restrained was a violation of his Eighth Amendment rights.   The Court finds that a favorable judgment for plaintiff on his excessive use of force claim would not require a jury to necessarily find that plaintiff did not commit violence against a correctional officer at the onset of the altercation.   Rather, to prevail on his § 1983 claim for excessive use of force, plaintiff must prove that the correctional officers maliciously and sadistically caused unnecessary harm to plaintiff after a reasonable officer would have perceived that any threat plaintiff initially posed had passed.   A jury could determine that the officers used excessive force against plaintiff while he was restrained without calling into question the validity of plaintiff's conviction for committing violence against an officer. See Jacobs v. Bayha, No. 14-3055, 2015 WL 4237621, at *4 (3d Cir. July 14, 2015) ("[T]he doctrine of Heck v. Humphrey does not necessarily bar an action for excessive force by a person convicted of assault."); Smith v. City of Hemet, 394 F.3d 689, 693 (9th Cir. 2005) (en banc) (holding that a plaintiff convicted of resisting arrest could bring a § 1983 action for excessive use of force if the excessive force was employed against him after he had engaged in the conduct that constituted the basis for his conviction); cf. Nelson v. Campbell, 541 U.S. 637, 647 (2011) ("[W]e were careful in Heck to stress the importance of the term 'necessarily.'"); Martinez v. City of

Albuquerque, 184 F.3d 1123, 1127 (10th Cir. 1999) ("The state court's finding that Martinez resisted a lawful arrest . . . may coexist with a finding that the police officers used excessive force to subdue him."). Accordingly, the Court rejects defendants' argument that Heck bars plaintiff's excessive use of force claim as a matter of law.

Defendants also argue that plaintiff's guilty plea to committing violence against a correctional officer collaterally estops him from claiming the officers used excessive force against him under the facts presented. In § 1983 litigation, the Supreme Court has noted that the preclusive "effect of state-court decisions in § 1983 actions is a matter of state law." Heck, 512 U.S. at 480 n.2. In accordance with Heck, the Missouri Supreme Court has held that a defendant's prior guilty plea can be used to collaterally estop the defendant from asserting contrary arguments in subsequent civil litigation. See James v. Paul, 49 S.W.3d 678, 682–88 (Mo. banc 2001) ("Applying collateral estoppel in this situation serves to prevent the potential of collusive litigation as well as promoting the other policies of finality, consistency and judicial economy.").

Before giving preclusive effect to a prior adjudication under collateral estoppel principles, a court must consider four factors: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." Id. at 682–83. Here, the Court finds the first factor dispositive. The issue presented in the state court adjudication is distinct from the claim at hand. Rather than asserting

a contrary argument in support of his excessive use of force claim, plaintiff submits allegations consistent with his conviction for committing violence against a correctional officer prior to the officers' use of excessive force upon him. The Court thus concludes that collateral estoppel does not apply to plaintiff's claim.

Defendants do not challenge the factual merits of plaintiff's excessive use of force claim. Upon review of the record presented, the Court finds a genuine dispute of material fact for a jury to determine whether the officers' use of force was reasonable under the circumstances. See Bogan v. Stroud, 958 F.2d 180, 185 (7th Cir. 1992) ("Repeatedly stabbing, beating and kicking a prisoner who has been disarmed and knocked to the ground does qualify as a use of force for the very purpose of inflicting or causing harm rather than a good faith effort to maintain or restore security or discipline.") (internal quotations and ellipses omitted); see also Skrtich v. Thorton, 280 F.3d 1295, 1302 (11th Cir. 2002) ("While Skrtich's history may have warranted extra precautions in performing the cell extraction, the evidence, viewed in the light most favorable to Skrtich, is that once he was shocked with the shield, he was incapacitated. It is not constitutionally permissible for officers to administer a beating as punishment for a prisoner's past misconduct."). A jury may draw "reliable inference[s]" "as to whether the use of force could plausibly have been thought necessary," Whitley v. Albers, 475 U.S. 312, 321–22 (1986), or instead "exceeded the amount of force that was justified under the circumstances." McLaurin v. Prater, 30 F.3d 982, 984 (8th Cir. 1994). Therefore, defendants' motion for summary judgment on plaintiff's excessive use of force claim will be denied.

### B.    Failure to Intervene

After a guard begins to use excessive force on a prisoner, the officer "who knows another officer is using excessive force has a duty to intervene." Livers v. Schenck, 700 F.3d 340, 360 (8th Cir. 2012) (citing Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981)). To prove that an officer failed to intervene to protect a prisoner from excessive use of force by a guard, the prisoner must show that the guard used excessive force, that the officer knew or had reason to know about the excessive use of force, and that the officer had the opportunity to intervene to prevent the excessive use of force by his compatriot but failed to do so. Putman, 639 F.2d at 423.

Defendants McFerron, Moore, and Skaggs argue that plaintiff's failure to intervene claim against them fails because plaintiff's underlying excessive use of force claim fails. However, this argument is without merit because, as discussed above, defendants are not entitled to judgment as a matter of law on plaintiff's excessive use of force claim.

Defendant McFerron was an ERDCC custody supervisor. Defendants Moore and Skaggs were caseworkers at the ERDCC. Plaintiff testified by deposition and affidavit that these three defendants witnessed the May 28 incident from the doorway of his cell or wing of the prison. He contends that video evidence defendants produced for his review in discovery supports this allegation. In discovery responses, defendants deny that they witnessed the incident. Defendants produced no other evidence in the record before the Court to support their motion. The Court finds that defendants have not met their burden of showing the absence of a genuine issue of material fact with respect to plaintiff's failure to intervene claim. See United States v. Real Prop. Located at 3234 Washington Ave. N., Minneapolis, Minn., 480 F.3d 841, 845 (8th Cir. 2007) ("[W]here specific facts are alleged that if proven would

call the credibility of the moving party's witness into doubt, summary judgment is improper . . . . Indeed, if the credibility of a critical interested witness is even partially undermined in a material way by the non-moving party's evidence, summary judgment in favor of the party with the burden of proof should be denied.") (internal quotations and citations omitted). Accordingly, the defendants' motion for summary judgment on plaintiff's failure to intervene claim will be denied.

### C. Failure to Protect

Defendants Lombardi, Kempker, Russell, Lewis, Treece, Vandergriff, Owens, Sturdevant, and LaPlant are all administrative or high ranking MDOC or ERDCC officials. These defendants contend that plaintiff's failure to protect claim against them fails as a matter of law, because the undisputed facts demonstrate they were not deliberately indifferent to plaintiff's health or safety. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To state a failure-to-protect claim, a plaintiff is required to show that "1) defendants were aware of facts from which they could infer the existence of a substantial risk of serious harm to him, (2) they actually drew the inference, and (3) they failed to take reasonable steps to protect him." Schofield v. Hopkins, 491 F. App'x 772, 774 (8th Cir. 2012) (citing Farmer, 511 U.S. at 836–38, 844).

"An obvious risk of a harm justifies an inference a prison official subjectively disregarded a substantial risk of serious harm to the inmates." Lenz v. Wade, 490 F.3d 991, 995 (8th Cir. 2007). "[A] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisor liability." Id. at 995–96 (quoting Howard v. Adkison, 887 F.2d 134, 138 (8th Cir. 1989)). "However,

as the number of incidents grow[s], and a pattern begins to emerge, a finding of tacit authorization or reckless disregard becomes more plausible." Id. (quoting Howard, 887 F.2d at 138); see also Falls v. Nesbitt, 966 F.2d 375, 378 (8th Cir. 1992) ("A 'pervasive risk of harm' requires evidence of frequent violence . . . which places a prisoner or group of prisoners in reasonable fear for their safety . . . .   In every case, a 'pervasive risk' is something more than a single incident and something less than a riot.").

Defendants produced a chart showing that from January 2011 to May 2013, there were 925 use of force incidents at the ERDCC.   Bell 214–16 [Doc. #125-23]. In discovery responses, defendant Lombardi stated that fifteen employees received some form of discipline for their conduct in these incidents during that time period. Defendant LaPlant, a grievance officer, stated that his office received approximately 120 grievances each year from inmates regarding excessive use of force.   Defendant Kempker stated that he received four written complaints on April 12, 2013 from inmates at the ERDCC.   Defendant Vandergriff stated that the number of use of force incidents where injuries occurred to offenders during his career at the ERDCC was "very small."   Defendants Lewis and Treece stated in discovery responses that from January 2011 to May 28, 2013, they received complaints about excessive force "on a regular basis."   Defendant Owens stated that he worked at the ERDCC as an investigator from January 2012 until June 2013 and received approximately six grievances from inmates in housing units one and two regarding excessive uses of force at the ERDCC that led to investigations.   Owens found the force used by an officer on an inmate excessive less than five times while he was employed as an investigator at the ERDCC.   Defendant Sturdevant stated in discovery responses that

he received approximately less than ten complaints from housing unit two at the ERDCC from January 1, 2011 until May 28, 2013. Sturdevant also stated that he has found less than twenty cases to involve excessive force in his five years as an MDOC employee.

The defendant correctional officers alleged to have used excessive force on plaintiff stated in discovery responses that they were involved in or witnessed Code 16 medical calls that resulted in the use of force on one to three occasions. These six officers have never been formally disciplined with regard to a use of force incident while employed at the MDOC. Defendant Huff stated that she was aware of 25 to 30 Code 16 calls in housing unit 2 that resulted in uses of force from January 1, 2011 until May 28, 2013. Defendants Howe, Villmer and Downs stated that they had been involved in less than ten use of force incidents during the same time period, some of which resulted in inmate injury.

The evidence defendants present in support of their motion for summary judgment consists mainly of discovery responses. Most of the documentary evidence defendants cite in their discovery responses and rely upon in support of their motion is not included in the record. E.g., Defs.' Ex. W [Doc. #125-23] (citing Bates-labeled Martin documents); Pl.'s Ex. A-3 [Doc. #139] (referring to audio recordings of interviews with the correctional officers involved and summaries of their statements as "the best evidence of what they said" produced for plaintiff in Bates-labeled Bell documents); Pl.'s Ex. A-4 [Doc. #139] (referring to incidents of excessive use of force at the ERDCC listed on Bates-labeled Bell documents); Pl.'s Ex. A-8 [Doc. #139] (referring to summaries, a video and photographs from the investigation of the use of force incident with which plaintiff was involved); cf. Fed. R.

Civ. P. 56(c)(1)(A) advisory committee's note to 2010 amendment ("Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record—including materials referred to in an affidavit or declaration—must be placed in the record."). Furthermore, the deposition and discovery responses defendants submitted in support of their motion are excerpts or otherwise incomplete.

Defendants argue that the evidence presented in the record demonstrates that the percentage of officers disciplined for use of force incidents at the ERDCC is only 1.6% or lower. Def.'s Ex. W [Doc. #125-23] (Lombardi's discovery responses stating that fifteen employees at the ERDCC were disciplined while 925 use of force incidents occurred at the ERDCC from 2011 to 2013). As such, defendants contend that there was not a pattern of behavior at the ERDCC to which they should have been aware or a substantial risk of serious harm to plaintiff which they ignored.

Plaintiff contends that the record in this case shows that inmates housed at the ERDCC are subjected to a substantial risk of serious harm at the hands of correctional officers. Specifically, plaintiff states that there was a practice of officers in housing unit two using Code 16 medical emergency calls to gain access to inmates in their cell, restraining the inmates in handcuffs, beating the inmates, and then lying about the force used. Plaintiff testified by affidavit and in his deposition that he knew of at least four inmates at the ERDCC who were beaten by staff while restrained in handcuffs before his assault and three others after. Plaintiff contends that defendants knew of a pattern of unconstitutional conduct and failed to act by properly investigating inmates' claims or disciplining officers for excessive uses of force. Plaintiff further

argues that the fact that the number of complaints filed at the ERDCC is so high while the number of officers disciplined is so low points directly to a culture of officials who fail or refuse to investigate or discipline excessive uses of force sufficiently, resulting in deliberate indifference to the health and safety of inmates.

The moving party in a motion for summary judgment bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. See Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 336–37 (1986) (holding that the party moving for summary judgment has the initial burden of production under Rule 56). Only when the moving party meets its initial burden of proof does the burden shift to the nonmoving party to go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 248. A genuine issue of material fact exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The Court finds that, based on the record presented in support of their motion, defendants have failed to meet their burden of showing the absence of a dispute of material fact as to whether they had the requisite knowledge or drew the necessary inferences to support a claim of deliberate indifference for their failure to protect plaintiff. See Celotex, 477 U.S. at 336–37. The statistical evidence presented and defendants' incomplete and vague discovery responses are insufficient to allow the Court to engage in a meaningful review of the record and entitle defendants to judgment as a matter of law on this claim. Accordingly, defendants' motion for summary judgment on plaintiff's failure to protect claim will be denied.

## D. Conditions of Confinement

Plaintiff contends that the conditions he was confined in from May 28, 2013 after his assault until May 31, 2013 violated his constitutional rights. Defendants argue that summary judgment should be granted in their favor as to plaintiff's conditions of confinement claim, because plaintiff cannot show an objectively serious deprivation of the minimal civilized measure of life's necessities, or that the prison officials had subjective knowledge of a serious risk of harm to plaintiff.

The Eighth Amendment prohibits "cruel and unusual punishments," and requires that prison officials provide humane conditions of confinement. U.S. Const. amend. VIII; Farmer, 511 U.S. at 832. Punishment is cruel and unusual if it "'deprive[s] inmates of the minimal civilized measure of life's necessities.'" Howard, 887 F.2d at 137 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Although the Constitution "does not mandate comfortable prisons," Rhodes, 452 U.S. at 349, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)); see also Whitnack v. Douglas Cnty., 16 F.3d 954, 957 (8th Cir. 1994) ("[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time.") (quoting Howard, 887 F.2d at 137).

To establish that his conditions of confinement violated the Eighth Amendment, plaintiff must show that "(1) the alleged deprivation was 'objectively, sufficiently serious,' resulting 'in the denial of the minimal civilized measure of life's necessities,' and (2) that the prison officials were deliberately indifferent to 'an excessive risk to

inmate health or safety,' meaning that the officials actually knew of and disregarded the risk." Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer, 511 U.S. at 834, 837). A prisoner asserting a conditions of confinement claim must identify the "deprivation of a single, identifiable human need such as food, warmth, or exercise," Wilson v. Seiter, 501 U.S. 294, 304 (1991), and "the risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson, 501 U.S. at 305.

Plaintiff testified in deposition that, following the altercation with correctional officers, his water remained turned off, his clothing was taken away, and other property, including his glasses, medication, a mattress, blankets and sheets, was removed from his cell. Plaintiff also claims he was not fed lunch on the date of the incident. When he was offered his lunch meal the next day, plaintiff stated that a correctional officer asked him if he really wanted to eat food that was handled by the officers after the incident. Plaintiff testified that he refused his meals during the lunch shift for approximately two months until the wing officer was replaced. Upon questioning in his deposition, plaintiff admitted that he declined water offered to him during the midnight shifts on May 28 and May 29, 2013, because he was tired, cold, and did not want the water. It is undisputed that plaintiff did not receive clothing, toilet paper, or soap and his water was not turned back on until May 29, 2013, he did not receive a mattress, blankets, and sheets again until May 30, 2013, and he did not receive his other personal property until May 31, 2013.

Plaintiff argues that his constitutional rights to adequate conditions of confinement were violated because the condition in which he was left after his assault was an extension of the excessive force used upon him, amounting to a continuous course of mistreatment for 24 to 77 hours. Plaintiff cites to an MDOC standard operating procedure for inmates placed on "strip cell/limited property status," which he asserts requires that offenders placed on such a status have their behavior assessed each shift to determine if their property should be returned to them. Plaintiff states that his behavior was never assessed. Rather, plaintiff contends that he was left naked in his administrative segregation cell without clothing, a mattress, sheets, a blanket, glasses, medication, and other property, solely for the purpose of humiliation, causing him mental and emotional damage.

In support of their motion, defendants have not proffered evidence or an explanation as to a legitimate penological goal or otherwise proper purpose for depriving plaintiff of clothing, bedding, hygienic products and other property for 24 to 77 hours. Plaintiff's reference to the MDOC policy and his assertion that his behavior was never assessed during the three-day period for which he was deprived of property and other basic necessities supports the inference that defendants acted in bad faith and with no legitimate purpose. See Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015) (stating that under the subjective prong of deliberate indifference, a court can infer knowledge from the obviousness of the risk and recklessness from the obvious inadequacy of a response to a risk) (citing Farmer, 511 U.S. at 842–43 and Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009)). However, even if a genuine issue of material fact exists as to whether the defendant correctional officers knowingly

disregarded a risk to plaintiff's health or safety, plaintiff has not shown that the deprivation amounted to a denial of the minimal civilized measure of life's necessities.

The Eighth Circuit has found conditions far more severe than those alleged by plaintiff insufficient to demonstrate a constitutional violation. See Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999) (restraining an inmate in handcuffs and leg shackles for twenty-four hours after he was accused of throwing liquid on a guard while on a work detail outside the prison did not amount to a constitutional violation; plaintiff was not deprived of bedding, food, or bathroom facilities, and he was checking on by a nurse and guard at regular intervals); O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 83–84 (8th Cir. 1996) (per curiam) (requiring one inmate to sleep on a concrete slab for four days and the other inmate to spend three days without a blanket or mattress where the inmates were also deprived of underwear, exercise, mail and visits, but not their normal diet, sanitation and hygienic supplies did not amount to the denial of minimal civilized measures of life's necessities); Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995) (placing an inmate in a strip cell for two days without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him where plaintiff did not present evidence that he suffered any injury or adverse health consequences as a result of his confinement entitled defendants to qualified immunity on the plaintiff's conditions of confinement claim); Williams, 49 F.3d at 444 (confining an inmate for four days in a strip cell without clothing, bedding, water, legal mail or hygienic supplies, but providing the inmate three meals a day did not result in the denial of the minimal civilized measures of life's necessities).

While plaintiff did not have clothing or personal hygienic items for one day, bedding for two days, and his personal property for three days, the record indicates that prison officials continued to offer him food, water, and shelter throughout this time period. Accordingly, because the undisputed facts do not show that the alleged deprivation was objectively and sufficiently serious, amounting to a denial of the minimal civilized measure of life's necessities, defendants are entitled to summary judgment on plaintiff's conditions of confinement claim.

### E. Due Process

Plaintiff claims that his Fourteenth Amendment right to due process was violated when he was found guilty of conduct violations and referred for prosecution without being given a copy of the conduct violations, without being allowed to call witnesses, and without being given the opportunity to present evidence to prove his innocence. Defendants contend that plaintiff's denial of due process claim fails because plaintiff refused to sign a waiver of his rights so he could make a statement at his hearing, and because plaintiff was allowed to present written statements from the three witnesses he requested to call to testify at the hearing.

It is undisputed that plaintiff had a hearing regarding alleged conduct violations arising out of his altercation with the defendant correctional officers. Plaintiff requested, but was not allowed to call witnesses to testify at the hearing. The parties dispute whether plaintiff was allowed to present written statements from witnesses at the hearing. Because plaintiff refused to sign a waiver of his <u>Miranda</u> rights, he was prohibited from making a statement on his own behalf at the hearing. Officers issued plaintiff three conduct violations at the hearing. As a result, plaintiff was referred to

disciplinary segregation for 90 days, to administrative segregation for one year, and for state prosecution.

When "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand." Jones v. Mabry, 723 F.2d 590, 594 (8th Cir. 1983). The Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974), established certain minimum due process rights that must be allowed to prisoners in disciplinary proceedings. The Wolff Court wrote that:

> [T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. . . . [However,] [p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

418 U.S. at 566. The inmate's right to present witnesses is, then, "necessarily circumscribed by the penological need to provide swift discipline in individual cases." Ponte v. Real, 471 U.S. 491, 495 (1985). "Prison officials may not, however, arbitrarily deny an inmate's request to present witnesses or documentary evidence." Malek v. Camp, 822 F.2d 812, 815 (8th Cir. 1987) (citing Ponte, 471 U.S. at 495–97). Although not required, "it would be useful for the [disciplinary c]ommittee to state its reason for refusing to a call witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." Wolff, 418 U.S. at 566; see also Ramer v. Kerby, 936 F.2d 1102, 1104 (10th Cir. 1991) (collecting circuit court cases interpreting the language in Wolff to require that prison officials determine on an individual basis whether permitting an inmate to call or confront a particular witness

would threaten institutional safety or correctional goals). While the reasons for refusing to grant such a request are not required to appear in the administrative record, once the refusal is challenged in court, prison officials have the burden of proving an adequate justification for their actions. Graham v. Baughman, 772 F.2d 441, 444–45 (8th Cir. 1985) (citing Ponte, 471 U.S. at 491).

Defendants have offered no explanation in the administrative record or the record before the Court as to why prison officials refused to grant plaintiff's request to call witnesses to testify at his hearing. See Ponte, 471 U.S. at 495–97; Graham, 772 F.2d at 444–45; see also, e.g., Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996) ("[A] blanket denial of permission for an inmate to have witnesses physically present during disciplinary hearings is impermissible, even where jail authorities provide for interviewing of witnesses outside the disciplinary procedure."). Instead, defendants simply contend that prison officials do not deny an inmate due process when they accept written statements rather than live testimony from fellow inmates at disciplinary hearings. See Malek, 822 F.2d at 815 ("[I]n the unique context of the prison environment, the Committee did not violate Malek's Fourteenth Amendment due-process rights when it accepted only the written statement of a fellow inmate.").

However, the documentary evidence defendants rely upon for their contention that plaintiff was permitted to present written statements from witnesses only establishes that plaintiff requested to call the witnesses to testify at his hearing. Def.'s Ex. U [Doc. #125-21]. Defendants have not presented sufficient evidence otherwise to establish that the witnesses' written statements were admitted as evidence or otherwise considered at plaintiff's hearing. As such, genuine disputes of material fact remain as to whether the prison officials' reasons for denying plaintiff's

request to present witness testimony at his hearing were constitutionally adequate and whether plaintiff was allowed to present or the hearing officers considered written statements from his proffered witnesses.

The <u>Wolff</u> Court also held that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense . . . no less than 24 hours" in advance of the hearing. 418 U.S. at 564. Additionally, subsequent to the hearing "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." <u>Id.</u> at 564–65 (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)). "Without written records, the inmate will be a severe disadvantage in propounding his own cause to or defending himself from others." <u>Id.</u> at 565.

Defendants have neither asserted nor presented evidence that plaintiff was provided written notice of the charges against him prior to the hearing or any written statement or explanation after the hearing as to the evidence relied upon or reasons for finding plaintiff guilty of the three conduct violations issued. Plaintiff asserts that he was not given a copy of his conduct violations or provided any explanation as to why or how he was found guilty. He contends that the hearing officers solely relied upon staff members' statements from the issued conduct violations. Accordingly, the Court finds a genuine dispute of material fact as to whether plaintiff's due process rights were violated at his conduct violation hearing. As such, defendants' motion for summary judgment on plaintiff's due process claim will be denied.

**F.     Qualified Immunity**

Finally, defendants contend that they are entitled to qualified immunity with regard to plaintiff's claims.   Qualified immunity shields government officials from civil liability insofar as their conduct in performing discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'"  Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting Howard v. Kansas City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009)).

As discussed above, the factual record, viewed in the light most favorable to plaintiff as the non-movant, demonstrates a genuine dispute of material fact as to whether the defendants used excessive force on plaintiff, failed to intervene to prevent the use of excessive force, failed to protect plaintiff from obvious or known dangers, and violated his due process rights. The next inquiry in the two-prong test for considering the denial of qualified immunity requires the Court to determine whether these claims involve rights clearly established at the time of the alleged deprivation.

"The law is clearly established if it gives the defendant officials 'fair warning' that their conduct violated an individual's rights when the officials acted."  Forrester v. Bass, 397 F.3d 1047, 1054 (8th Cir. 2005).   The standard does not require that there be a case with materially or fundamentally similar facts.  Brown v. Fortner, 618 F.3d 552, 561 (8th Cir. 2008).   "The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he was

confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001). If a state official violates a clearly established constitutional right, he is not entitled to qualified immunity. <u>Harlow</u>, 457 U.S. at 818–19.

Under the Eighth Amendment, prisoners have a clearly established right to be free from the excessive use of physical force in the absence of a security threat and for the purpose of inflicting unjustified harm. <u>E.g.</u>, <u>Hudson v. McMillian</u>, 503 U.S. 1, 6–7 (1992); <u>Thompson v. Zimmerman</u>, 350 F.3d 734, 735 (8th Cir. 2003) (reversing grant of summary judgment based on qualified immunity where guards beat a prisoner who was not resisting or causing a disturbance). It is also clearly established that law enforcement officers who know other officers are using excessive force have a constitutional duty to intervene. <u>Livers</u>, 700 F.3d at 360 (citing <u>Putman</u>, 639 F.2d at 423). Similarly, prisoners have a clearly established right to have prison officials protect them from, rather than act deliberately indifferent to, substantial risks of serious harm, including correctional officers' excessive uses of force on inmates. <u>Hudson v. Palmer</u>, 468 U.S. 517, 526–27 (1984) (holding that prison administrators "are under an obligation to take reasonable measures to guarantee the safety of the inmates"); <u>Farmer</u>, 511 U.S. at 832–33. Finally, it is clearly established that inmates have qualified due process rights to call witnesses and present evidence on their behalf at disciplinary hearings, which may not be arbitrarily denied, in addition to the right to receive advance written notice of the charges against them and a written statement providing the reasons for the disciplinary action taken. <u>Wolff</u>, 418 U.S. at 564–66; <u>Graham</u>, 772 F.2d at 444–46.

Reasonable officials in defendants' positions would have known that their actions violated plaintiff's Eighth and Fourteenth Amendment rights. Therefore,

defendants' motion for summary judgment on the basis of qualified immunity will be denied.

*     *     *     *     *

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion of defendants Lombardi, Kempker, Russell, Lewis, Treece, Vandergriff, Owens, Sturdevant, Howe, McFerron, Villmer, Jones, Downs, Huff, Russell, Jr., Moore, Skaggs, and LaPlant for summary judgment [Doc. #123] is **granted as to plaintiff's conditions of confinement claim and denied in all other respects.**


_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 21st day of January, 2016.